(No. 18556.

VENNING D. SIMONS *et al.* Appellees, *vs.* CLAUDE W. MOR-
RIS, Appellant.

*Opinion filed December 20, 1928.*

WYMAN, HOPKINS, MCKEEVER & COLBERT, (AUSTIN
L. WYMAN, of counsel,) for appellant.

TINSMAN & BLOCKI, (GALE BLOCKI, of counsel,) for
appellees.

Mr. COMMISSIONER CROW reported this opinion:

The circuit court of Cook county rendered a decree in
favor of complainants for specific performance of a con-
tract for the sale of a lot in the city of Chicago by Claude W.

Morris and others. The decree was rendered upon the finding and report of a master in chancery to whom the cause was referred to take and report testimony, with his conclusions of fact and law thereon. The master filed his report, with a recommendation for an accounting and that a deed should be made upon payment of the amount found due. He overruled objections to the report. They were allowed to stand as exceptions before the chancellor and were overruled, and a decree was entered June 21, 1927, for specific performance of the contract. Claude W. Morris has prosecuted an appeal to reverse the decree.

The bill was filed on December 3, 1924. It averred execution of a contract in November, 1919, between Claude W. Morris as seller and Louvie H. Simons as purchaser of the lot in controversy for $787, payable $520 on execution of the contract and the balance in monthly installments of $15 or more, with six per cent interest; that the title to the premises was held by the Chicago Title and Trust Company for the benefit of Morris, and he undertook and agreed to cause the trust company to execute and deliver to Simons, on payment of the purchase price, a sufficient deed of conveyance; that on May 15, 1920, Simons died intestate, leaving Venning D. and Gardell Simons, his brothers, his only heirs-at-law and next of kin, he having paid, as complainants believe, on account of the contract, the aggregate sum of $655, leaving a balance due of $132; that the contract provided the purchaser should pay taxes and special assessments payable after January 1, 1919; that if he did not pay them the seller might pay them and charge them against the property as additional purchase price; that Morris claimed to have paid taxes and assessments, but the amount is unknown to complainants; that the premises were sold for taxes to the city of Chicago and a deed was delivered to the city, which thereafter conveyed its interest to B. Neff, who as an employee of Morris holds title for him under the tax deed. The bill averred complainants' readiness and

ability to pay all amounts due under the contract, including taxes, assessments, interest, etc., but that Morris refused to give a statement of the amount due him, and therefore they are unable to tender to him the amount remaining due. There was a prayer for a decree for specific performance of the contract by Morris, for an accounting as to the amount due him, and that Neff be ordered to quit-claim to complainants the interest acquired under the tax deed.

The answer denied consideration was furnished by Morris for the quit-claim deed to Neff; denied readiness, willingness and ability of complainants to perform and averred their unwillingness to perform until September, 1924, when the premises had increased largely in value; denied Morris' refusal to give complainants a statement, and averred that if they had no knowledge of the amount due on the contract it was because of their indifference; that statements were given from time to time and conferences and letters re-closing the transaction for upwards of three years after the date of decedent's death, and that after all such negotiations had failed Morris served a notice of forfeiture in accordance with the terms of the contract; that at the time of the death of Simons the premises were of doubtful value and the complainants were in doubt as to the worth of the premises; that since that time, and particularly in the years 1923 and 1924, the premises had increased largely in value and at the filing of the answer were worth $4500, and that it is only on account of such increase that complainants are willing to perform the contract. Morris offered to do equity and to re-pay to complainants the sum of $655 paid on the contract by their intestate.

Six errors are assigned on the record. The fifth is, the court erred in entering a decree for specific performance. Every question presented is covered by it. All other questions are subsidiary to the right of complainants to specific performance.

Counsel for appellant admit in the beginning of their argument that, as a general rule, where a contract fixes the time for performance and the parties negotiate beyond the time fixed the contract is thereby kept alive and in force. It is conceded, too, that *laches* cannot be availed of as a defense where there is reasonable excuse for delay; that, considering *laches* as a defense in this case, it might be said that Morris, by continuing to give statements, has placed himself in a position where he cannot insist upon the defense, the more so, perhaps, in view of the fact that after the property went to tax sale, and subsequently to deed, he bought up the deed and apparently endeavored to secure payment from complainants of a larger sum than he had paid for the deed, but the contention is that complainants' delay was speculative, and therefore *laches* is available as a defense.

The history of the transaction does not lead to the conclusion that the delay in completing the purchase was occasioned by complainants to ascertain whether the property was worth the money to be paid for it. All the evidence shows that Morris was attempting to get more for it from complainants than the contract price. The value of the property had increased materially. It was in a new subdivision, distant, apparently, from other settlements and from industries. While in November, 1919, Simons entered into a contract for the purchase of the lot from Morris for $787, payable $520 on execution of the contract, in the latter part of 1920 it was rapidly increasing in value. The evidence clearly shows that delay in consummation of the contract of purchase was not occasioned by the contract vendee or by complainants. The evidence discloses no ground for apprehension as to the value of the lot as an investment. Morris claimed to have paid money for taxes and special assessments on the property for which he was entitled to reimbursement. Selleck, a witness for complainants, testified to a conversation with Morris about the transaction:

"In the first conversation I had with Morris I asked him if he had kept the taxes up. Simons had not paid some. He said yes, and I told him to pay the taxes until he got the memorandum ready for me. He said yes, he would be glad to keep it going. September 20 or 21, 1921, in Morris' office I told Morris it had been a year and a half since Simons died and that I wanted to be sure there would be no forfeitures. He said there had been no sales. He said the taxes and assessments would be taken care of until I got the information I wanted, which I never got." Morris did not deny the conversation. Efforts were made by complainants to ascertain the amounts so that the contract could be carried out. Morris was told that was the purpose of the statements he was requested to make. Statements of different amounts were made. He promised to ascertain the correct amount and advise complainants so that the sale could be completed. He attributed the delay, among other things, to the alleged fact that when he paid taxes or special assessments, payments were made by checks for this and other property, and it was necessary to separate the taxes on this lot from those on other lots. He admitted that complainants were persistently demanding statements of the amount due. He manifested irritation on account of their persistence. There was no reason for the demand except to meet it by payment. There could be no reason for refusing it except to thwart the purpose for which it was demanded. Two witnesses, Selleck and Heeren, corroborate complainants' testimony that defendant was told that they were ready, willing and able to make payment of the amount due upon his making an itemized statement of the amount. The record shows without contradiction that he furnished five statements, none itemized, the amounts exceeding the actual amount due from approximately $200 to $800. He promised itemized statements but never furnished them. One statement was sent out, but he testified it was sent by his book-keeper; that if it had been re-

quested of him it would not have gone out; that he could scent a lawsuit in the atmosphere and was not going to send out any of his ammunition. His book-keeper was not called as a witness.

The record cannot be read without carrying the conviction that the statements of amounts due, given by defendant to complainants, were deliberately false for the purpose of delaying the suit against him for specific performance. A circumstance of no little weight is that at the hearing he stipulated that a tax deed to the property was procured for his benefit; that he controlled the disposition of the property and of the tax deed and that the title under it was held by Neff in trust for him, as charged in the bill. In his answer he denied the charge in the bill. The contract provides that taxes paid by the vendor shall become additional consideration agreed to be paid for the premises and become immediately due and payable, with interest from date of payment. Complainants made an offer at the hearing before the master to pay defendant unpaid balances upon the contract, the amount of taxes, special assessments which he paid, the amount which had been paid for the tax deed taken in the name of Neff as trustee for defendant, with interest on the several sums. The offer was objected to as not being specific—as not offering to pay any specific amount. It is clear from the evidence that the only reason for indefiniteness was the persistent refusal of defendant to render a definite statement. March 15, 1923, defendant wrote a letter to the Simonses requesting an affidavit signed by both heirs that they were sole heirs-at-law and next of kin of deceased. From all the evidence as to his conduct, the inference is not unreasonable that the request was designed to allay fear or doubt that he did not intend to carry out the contract. July 19, 1924, he wrote another letter to them, saying that by reason of the failure to make payments as specified in the contract he had decided to exercise his option in the contract as seller and declare the contract for-

feited and determined, together with all payments made thereon. The undisputed facts in the record disclose that complainants are entitled to the relief sought by their bill.

The parties stipulated in the circuit court that the total amount due defendant to June 10, 1927, was $563.82, including $132, the balance of the purchase price. The stipulation embraces all items composing the aggregate. The aggregate is less than half of some of the demands made by defendant.

There is no evidence in the record showing or tending to show that defendant was in any manner prejudiced by complainants' failure to bring suit for specific performance sooner. The complaint of delay is groundless in fact and in law. *Laches* is such neglect or omission to assert a right as, taken in conjunction with lapse of time more or less great, and other circumstances causing prejudice to the adverse party, operates as a bar in a court of equity. (*Morse* v. *Seibold,* 147 Ill. 318.) In an equitable proceeding it is only when by delay or neglect to assert a right the adverse party is lulled into doing that which he would not have done, or into omitting to do that which he would have done in reference to the property had the right been properly asserted, that the defense of *laches* can be considered. (*Troyer* v. *Erdman,* 320 Ill. 140; *Compton* v. *Johnson,* 240 id. 621; *Neidhardt* v. *Frank,* 325 id. 596.) The defense of *laches* as a bar to relief is not sustained.

The decree of the circuit court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Crow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*