**City of Chicago Heights, Appellant, v. Public Service Company of Northern Illinois, Appellee.**

**Gen. No. 45,483.**

Opinion filed January 21, 1952. Released for publication February 5, 1952.

RUSSELL & BRIDEWELL, of Chicago, and JOSEPH J. McGRANE, of Chicago Heights, for appellant; DAVID A. BRIDEWELL, JOHN A. COOK, and HORACE RUSSELL, all of Chicago, and JOSEPH J. McGRANE, and MAURINO R. RICHTON, both of Chicago Heights, of counsel.

MITCHELL, CONWAY & BANE, of Chicago, for appellee; STEPHEN A. MITCHELL, CHARLES A. BANE, and THOMAS J. RUSSELL, all of Chicago, of counsel.

MR. JUSTICE NIEMEYER delivered the opinion of the court.

Plaintiff appeals from an order striking its second amended complaint and dismissing its suit, commenced March 24, 1949, to vacate, set aside and enjoin the enforcement of a judgment by default for want of a plea and affidavit of merits entered November 1, 1933 in defendant's action (Case No. 585593 in the superior court of Cook county, Illinois) to recover the agreed price of electric energy ($27,845.01) and merchandise ($392.15) furnished plaintiff between December 19, 1930 and August 10, 1933. On appeal to the Supreme

Court the case was transferred to this court. (408 Ill. 310.)

Plaintiff alleges that during the time of the transactions involved herein the constitutional debt limitation of plaintiff was 5 per centum of the value of the taxable property within the city (Constitution of 1870, art. 9, sec. 12), and the statutory limit of indebtedness was 2½ per cent of the taxable property therein (Ill. Rev. Stat. 1951, Cities and Villages Act, chap. 24, sec. 18–1) [Jones Ill. Stats. Ann. 21.1431]; that plaintiff could not validly make any contract or incur any expense "unless an appropriation has been previously made concerning that contract or expense. Any contract made or any expense otherwise incurred, in violation of the provisions of this section shall be null and void as to the municipality, and no money belonging thereto shall be paid on account thereof." (Ill. Rev. Stat. 1951, Cities and Villages Act, chap. 24, sec. 15–3) [Jones Ill. Stats. Ann. 21.1386]; that purported contracts under which the electric energy and merchandise, the subject matter of defendant's suit, were furnished, were entered into between October 18, 1930 and April 17, 1933; that the assessed value of property within the city as equalized by the state tax commission for the years 1928 through 1932, and the maximum statutory debt limitation of plaintiff on selected dates in the years 1930 through 1933 were the amounts stated in the complaint; that on said selected dates, namely October 31, 1930, May 1, 1931, January 31, 1932 and August 1, 1933, the indebtedness of plaintiff exceeded its statutory debt limitation from $117,756.13 to $420,801.62, the percentage of the debt to the assessed value of property on said dates being, respectively: 3.25%, 3.59%, 3.58% and 5.43%; that said purported contracts and defendant's claim for electric energy and merchandise furnished thereunder were void and unenforcible because they created an

indebtedness against plaintiff in excess of its debt limitations and because there had been no appropriation concerning the contracts or the expenses incurred thereunder; that defendant's action was commenced on or about August 20, 1933, summons was served on the mayor of plaintiff on September 14, 1933, the corporation counsel of plaintiff entered its appearance and his own as its attorney on September 19, 1933 but defaulted in filing a plea or affidavit of merits to plaintiff's verified statement of claim; judgment by default for $28,237.36 and costs was entered November 1, 1933, after timely notice to the corporation counsel of the intended application for judgment; that no attempt has been made to enforce the judgment or revive the same; that at the time of the commencement of the action and the entry of judgment therein plaintiff and defendant knew that the alleged indebtedness set forth in the complaint therein was unenforcible for the reasons aforesaid; that plaintiff's failure to defend the action, and the entry of the judgment, were due to ''collusion and constructive fraud in the nature of an agreement that a 'friendly' suit be brought.'' Plaintiff prayed that the judgment be vacated and set aside, that defendant be enjoined from attempting to enforce the judgment, and that plaintiff have such other and further relief as may be just and equitable. Defendant's motion to strike the complaint and dismiss the action was allowed.

██ Defendant does not attempt to sustain the judgment in its action as one based on a valid claim. The sufficiency of the allegations in respect to the excessive indebtedness of plaintiff and the lack of an appropriation when the contracts on which defendant's claim was predicated were entered into, is not questioned. These matters being well pleaded they must be taken as true on this appeal. The law is clear. In speaking of a municipality whose indebtedness was

in excess of the constitutional limitation, the court in *Prince v. City of Quincy*, 105 Ill. 138, said (142–3):

". . . it is seriously contended by counsel for appellant that a municipality thus circumstanced may become indebted for supplies to meet its ordinary wants and necessities. To so construe the constitution would be to add a provision, in the nature of an exception, to the constitution, which the framers of that instrument did not see proper to insert. This, as is well settled by an unbroken current of authority, is not permissible where the language of the law is clear and unambiguous, as is the case here, . . . ."

In *Green v. Hutsonville School Dist.*, 356 Ill. 216, tax payers sought an injunction restraining the extension and collection of taxes for the payment of bonds issued for the payment of certain judgments entered by consent on obligations incurred in building a school in excess of the constitutional limitation of the district. Demurrers to the bill were sustained and the suit dismissed for want of equity. On appeal the judgment of the trial court was reversed and the cause remanded, the Supreme Court holding that "Upon the facts admitted by the demurrer to this bill, the original indebtedness, which was later merged in the judgments, was void and the judgments permitted to be entered thereon were also void." In speaking of the constitutional limitation of indebtedness, the court said (p. 220):

"In discussing this constitutional prohibition this court has made itself very clear and there can be no reason for doubting our position in the matter. We have held that it makes no difference under what guise or by what sort of trick the attempt is made, an indebtedness in excess of the constitutional limit cannot be voluntarily created. It was the intention of the framers of our constitution that the property of citizens should

not be burdened beyond the five per cent limitation and that no plan or scheme can be permitted to create an indebtedness in excess of that amount. (*People v. Chicago and Alton Railroad Co.,* 253 Ill. 191; *Wade v. East Side Levee District,* 320 *id.* 396, and cases there cited.)''

No case passing on the statutory limitation of indebtedness to 2½ per cent of the value of the taxable property within the municipality has been brought to our attention. However, the language of this limitation is substantially identical with the constitutional limitation. The purposes of the limitations are the same. Whatever is said in reference to the constitutional limitations is applicable to the statutory limitations and the same principles of law should and do govern. In *DeKam v. City of Streator,* 316 Ill. 123, the Supreme Court affirmed a decree restraining the city and its officers from paying any further sums of money to an engineer who had prepared plans, drawings and specifications for a sewer system under a contract entered into in violation of the statutory debt limitation, before an appropriation had been made concerning the expense created by the contract. The court said (p. 129):

''A contract expressly prohibited by a valid statute is void. This proposition has no exception, for the law can not at the same time prohibit a contract and enforce it. The prohibition of the legislature cannot be disregarded by the courts. (*Botkin v. Osborne,* 39 Ill. 101; *Wells v. People,* 71 *id.* 532; *Board of Education v. Arnold,* 112 *id.* 11; *Penn v. Bornman,* 102 *id.* 523; *Cincinnati Mutual Health Assurance Co. v. Rosenthal,* 55 *id.* 85; *Borough of Milford v. Milford Water Co.,* 124 Pa. 610; *Berka v. Woodward,* 125 Cal. 119; *Levison v. Boaz,* 150 *id.* 185.)''

Thus it appears from the allegations of the complaint that plaintiff had a good and sufficient defense to

defendant's action and that not only the contracts on which that action was based, but the judgment by default into which the contracts were merged, were void. Defendant concedes the jurisdiction of a court of equity to hold for naught and restrain the enforcement of a judgment at law procured by fraud. It asks affirmance of the order dismissing plaintiff's action because, as stated in its brief, "plaintiff has failed to meet the prerequisites for equitable relief from such a judgment at law. It has wholly failed (a) to allege facts showing the judgment against it was obtained by actual fraud or collusion, (b) to show that it was diligent in presenting its defenses in the original action and diligent in seeking relief thereafter and (c) to explain why, if it had a case, it did not avail itself of its adequate legal remedies."

 In respect to the allegations of fraud and collusion, the mere charge that the entry of the judgment was "accomplished by virtue of collusion and constructive fraud in the nature of an agreement that a 'friendly' suit be brought," is not enough. As said in *Owens v. Green,* 400 Ill. 380, p. 393:

"An allegation of conspiracy, collusion and fraud must show the facts upon which the allegation is based, and a general charge that a party acted fraudulently or was guilty of fraud is a statement of a conclusion and is not good pleading. These general words, unsupported by facts, are, at best, mere vituperation. (*People ex rel. Parker v. Board of Appeals,* 367 Ill. 559; *Tribune Co. v. Thompson,* 342 Ill. 503; *Doose v. Doose,* 300 Ill. 134.)"

The pertinent inquiry is whether, independent of the language quoted, the facts alleged in respect to the indebtedness of plaintiff being in excess of its constitutional and statutory limitations, the want of an appropriation when the contracts on which defendant's

400

claim was based were entered into, and the conduct of the parties in the suit in which the judgment by default was entered, show collusion and fraud in the entry of the judgment. The complaint shows by apt allegation that plaintiff had a good and valid defense to defendant's action and that the judgment entered therein was void. Plaintiff, pleading its evidence, attaches to the complaint a letter from the defendant's attorney asking the mayor of plaintiff to "advise whether it is satisfactory if we go ahead and have a friendly, suit brought and a judgment entered for the amount shown?" It further appears by proper allegation that the suit was thereafter brought, that service was had upon plaintiff and its appearance entered by its corporation counsel, that plaintiff defaulted in filing a plea and affidavit of merits to defendant's verified statement of claim, and that after timely notice a judgment by default was entered. Defendant's suit was an adversary proceeding only in form. The judgment was not entered on a hearing on the merits, but by the default, acquiescence and tacit consent of plaintiff. The officials of plaintiff and the officers and agents of defendant were charged with notice of the limited powers of plaintiff, the indebtedness of plaintiff and the law in respect to any indebtedness in excess of the constitutional and statutory limitations. They therefore knew that the judgment was a nullity. It is a necessary inference from these facts that the action of the defendant in procuring, and of the officials of plaintiff in permitting the judgment to be entered by default, was collusive and fraudulent. There is no distinction in law between the conduct of defendant and the officials of plaintiff in this case and the conduct of the judgment-plaintiffs and the members of the board of education in *Green v. Hutsonville School Dist., supra,* in which the board of education entered its appearance and confessed judgment by *cognovit* in the

401

usual form in actions of assumpsit on indebtedness in excess of the district's constitutional limitation. The court said (p. 221):

"We thus see that when the judgments in question were entered they were for a non-existent consideration, and it needed only a plea to that effect on behalf of the school board to have prevented their entry. The board had paid $1000 attorneys' fees in connection with this transaction, and entirely aside from that would be presumed to know the law. It would also be presumed, under normal circumstances, to do its duty, which would be to protect the interests of the tax-payers, against any illegal and unjust charge. Inasmuch as the board of education deliberately incurred an indebtedness far beyond the constitutional limitation, and inasmuch as it knew it was violating the law in doing so, *it is not only a fair but a necessary inference that its confession of judgment upon these claims was collusive and fraudulent,* and again we find the law to be clear upon the point involved." (Emphasis added.)

The case of *Village of Hartford v. First Nat. Bank of Wood River,* 307 Ill. App. 447, was an action in chancery to set aside and hold for naught a consent judgment against the village on the ground that the items on which the judgment was based (consisting substantially of warrants payable solely out of funds realized from the collection of special assessments) were unlawful or improper claims or charges against the general revenue funds or credits of the village, and that the action of the president and board of trustees in consenting to or confessing judgment, together with the action of the defendant in procuring the same, was and is a fraud upon the village and the public. Between February 1932, when the judgment was entered, and

402

June 1938, when the complaint was filed, the village made substantial payments on the principal and interest of the judgment. The amended complaint was dismissed on motion of defendant, and, plaintiff standing by the complaint, judgment was entered against it. On appeal this order was reversed and the cause remanded with directions to overrule the motion to dismiss and proceed in accordance with the opinion of the Appellate Court. To maintain the ruling of the trial court defendant urged several grounds of complaint, one of which was that "Plaintiff's complaint does not contain any facts to show that the defendant bank was guilty of fraud." In respect to this objection the court said (p. 452):

"On the second point raised by defendant, as to the failure of the complaint to recite facts showing fraud, it is only necessary to state that the complaint sets up facts which, in light of the law, demonstrate that the municipal officials engaged in an act, which was wholly unauthorized, in consenting to a judgment on warrants which were expressly declared not to be payable out of the general fund, but only out of the collection of special assessments, the remedy for the enforcement of which is by mandamus or injunction.

". . . The attempt to convert the warrants into an obligation against the general funds of the Village by the entry of judgment through consent is adequately alleged as the basis of the fraudulent act of the then president and board of trustees of the Village, acting in conjunction with the defendant."

The charge of fraud is well pleaded.

 The second contention of defendant is that plaintiff's suit was properly dismissed because plaintiff failed to show diligence in presenting its defense in the original action and in seeking relief thereafter. The holding in *Metzger v. Horn*, 312 Ill. 173, cited by de-

403

fendant, is that in a suit to enjoin the enforcement of a final judgment "it will not be sufficient simply to show injustice has been done by the judgment, but it must also appear the judgment was not the result of inattention or negligence." Here the complaint shows that the failure to defend the original action was due to the fraud and collusion of defendant and the mayor and corporation counsel of plaintiff. This charge negatives inattention or negligence on the part of plaintiff. We need consider only the charge of want of diligence in seeking relief from the judgment. Plaintiff's action was not commenced until more than 15 years after the entry of the judgment. Defendant had taken no steps to enforce or revive the judgment, but the statute of limitations had not run against its renewal by scire facias or ordinary civil action in lieu thereof. (Ill. Rev. Stat. 1951, ch. 83, Limitations, par. 24b. [Jones Ill. Stats. Ann. 107.284 (2)]) There is nothing in the complaint tending to show that defendant had been prejudiced or injured by reason of plaintiff's delay. In Illinois, as in most jurisdictions, delay alone is not regarded as constituting laches, but only delay which places another at a disadvantage. As said in *Schultz v. O'Hearn,* 319 Ill. 244, 248-249:

"Lapse of time is only one of many circumstances from which the conclusion of *laches* must be drawn. Each case must be determined by its own particular facts. (*Reynolds v. Sumner,* 126 Ill. 58.) Lapse of time, alone, is not sufficient to bar a bill showing equity on its face, (*Smith v. Ramsey,* 1 Gilm. 373,) and it is no bar where the party has been ignorant of his rights. (*Roby v. Colehour,* 135 Ill. 300.) Where the obligation is clear and its essential character has not been changed by lapse of time, equity will enforce a claim of long standing as readily as one of recent origin as between the immediate parties to the transaction. (*Thorndike v.*

*Thorndike,* 142 Ill. 450.) Where there is nothing to show that the defendant has been misled by the delay to his injury, or in any way placed in a worse position by a failure to file the bill at an earlier date, there is no laches. (*Turpin v. Dennis,* 139 Ill. 274.)''

There has been no departure from his rule. As late as *Brandt v. Phipps,* 398 Ill. 296, the court said, ''Mere delay in asserting a right does not constitute *laches* but it must also appear that the party so claiming has been injured or prejudiced by the delay.'' See also *Simons v. Morris,* 333 Ill. 183; *Forest Preserve Dist. v. Emerson,* 341 Ill. 442; *Baumrucker v. Brink,* 373 Ill. 82; *Rogers v. Barton,* 386 Ill. 244. In the case of *Village of Hartford v. First Nat. Bank of Wood River, supra,* the defense of laches was denied. This contention in the instant case is not tenable.

The last objection, that plaintiff failed to avail itself of its adequate legal remedies for relief, is also answered adversely to defendant in the *Village of Hartford* case, *supra,* and cases cited. In the early case of *Nelson v. Rockwell,* 14 Ill. 375, the court said: ''Fraud is one of the broadest grounds of equity recognized by the courts and relief may be obtained against a judgment at law, although the party might find a remedy in the court of law.'' The only legal remedy available to plaintiff suggested by defendant is a petition in the nature of a writ of error *coram nobis.* Under express terms of the statute this is barred after five years from the date of the judgment. (Ill. Rev. Stat. 1951, ch. 110, par. 196. [Jones Ill. Stats. Ann. 104.072])

The order appealed from is reversed and the cause remanded with directions to overrule the motion to strike the complaint and to dismiss the suit, and for further proceedings in conformity with this opinion.

*Reversed and remanded with directions.*

BURKE, P. J. and FRIEND, J., concur.