In re Estate of August Luer, Deceased. Helen T. Winter, Ancillary Administrator of Estate of Augusta M. Turner, Deceased, Plaintiff-Appellant, v. Alton Banking and Trust Company, Executor of Estate of August Luer, Deceased, Defendant-Appellee.

Term No. 52–M–2.

Opinion filed November 7, 1952. Released for publication December 8, 1952.

Wilbur A. Trares, and William M. P. Smith, both of Edwardsville, for appellant.

Harold O. Gwillim, and O'Neill & O'Neill, both of Alton, for appellee.

Mr. Justice Scheineman delivered the opinion of the court.

The Estate of August Luer, deceased, was administered in the probate court of Madison county with appellee, Alton Banking & Trust Company, a corporation, the executor. Augusta M. Turner was a daughter and one of the heirs of said deceased. She petitioned the probate court to issue a citation against the executor to show cause why it should not be removed as executor and its accounts surcharged with various amounts, on the ground that the executor was guilty of fraud.

Pursuant to citation, the executor answered under oath, asserting that all the questions presented had been finally adjudicated in prior proceedings in courts of competent jurisdiction. The probate court decided for the executor. An appeal was perfected to the circuit court where the same contentions were heard, with appropriate reference to court proceedings. The same result was reached.

In the meantime, Augusta M. Turner died and Helen T. Winter as ancillary administrator of her estate was substituted as a party, and she has perfected this appeal.

328

■ It is first contended by appellant that the executor did not answer the charges made, as required by law, and therefore should be considered to have admitted all the charges of fraud and conspiracy made against it. This contention cannot be sustained. The law recognizes that there must be an end to litigation, and if the assertions made by appellant had been previously adjudicated in proper proceedings, the executor was entitled to present that defense. This it did by a sworn answer and motion to strike. The issues presented were the same in both courts below. We hold that the court had properly before it the question whether prior judgments were a bar to the present litigation.

There is no doubt that various acts of the executor now under attack were approved by the probate court in final judgments entered after due notice to all interested parties, including Mrs. Turner. She has also contested the same issues in suits in federal courts, hereafter mentioned. But it is appellant's theory that the finality of all such judgments is beside the point, because she charges FRAUD. Upon the basis that "fraud vitiates everything" she asserts that all prior final judgments of the probate court, and other courts, must now be reopened for further review and reconsideration.

This presents the question whether, under any principle of law or equity, the finality of a judgment has no effect against a charge of fraud, or whether the nature of the charges and issues must be considered.

While there are loose statements in decided cases to the general effect that "fraud vitiates everything," it will be apparent that courts have been forced by necessity to limit the application of this doctrine. If a second trial is allowed merely on the ground that in the first hearing, the opponent swore falsely, or concealed facts, without any showing that the complaining

329

party was unaware of the truth, there could be no finality in any judgment. After a second adverse decision, complaint could again be made as to false testimony and concealment on the second trial, and so on *ad infinitum*.

█ On the other hand, cases arise in which a party is prevented by fraud of his opponent from presenting the merits of the case to the court. Or, in spite of due diligence, a mistake or accident may intervene, without fault of the complaining party, resulting in an unjust decision. Or a third party may be affected by a judgment, without notice of the pending suit. In this limited class of cases, a final judgment may be attacked after thirty days (formerly after the term) on the ground of fraud, accident or mistake.

█ Thus, if a party was prevented from presenting the merits of his case by the fraud of his opponent, or by mistake, unmixed with any omission, negligence or fault on his own part, he could attack the final judgment after the term. *Ward v. Durham*, 134 Ill. 195. But false testimony, or false assertions of liability, cannot be advanced as grounds for setting aside such a judgment, for if that were permitted, there could never be an end to litigation. *Galena & S. W. R. Co. v. Ennor*, 116 Ill. 55. See also: *Burton v. Perry*, 146 Ill. 71; *Beck v. Lash*, 303 Ill. 549; *People v. Sterling*, 357 Ill. 354. And in *Nash v. Park Castles Apt. Bldg. Corp.*, 384 Ill. 68, the rules as to a person not a party to the suit were considered.

█ From these and many other decisions, there emerges the fixed principle that, in a collateral proceeding, the attack on a final judgment on the ground of fraud, accident or mistake, is limited to situations where the court's jurisdiction (or colorable jurisdiction) was based upon the fraud, accident or mistake; and it does not include the right to attack such judg-

ment on the ground it was obtained by false testimony, concealment or the like.

■ Also, we deem it unnecessary to cite authority for the common rule that a final judgment is not subject to collateral attack on the mere ground that the court exercised bad judgment, or erred in the application of rules of law, in deciding the merits of the case.

■ The next question is whether these principles apply to orders entered in probate. There has been some confusion on this subject, due to the recognition of a "continuing jurisdiction" in a probate court, which is equitable in nature. However, when the question has been squarely presented, the principles have been applied in probate. Thus, in 1877, our Supreme Court held that, after an order directing a sale, an objection to the necessity or propriety of the sale, made on the application to approve the sale, was barred as a collateral attack on the prior order. It further held that inadequacy of price is not, in itself, sufficient ground for disapproval of the sale, especially when there is no guaranty or assurance of a better price on re-sale. *Allen v. Shepard,* 87 Ill. 314.

Other cases recognizing the finality of judgments in probate are: *Commissioners of Lincoln Park v. Schmidt,* 395 Ill. 316; *Healea v. Verne,* 343 Ill. 325; *Lewis v. Blumenthal,* 395 Ill. 588; *Wood v. First Nat'l Bank of Woodlawn,* 383 Ill. 515; *Dean v. Kellogg,* 394 Ill. 495; and *Barnard v. Michael,* 392 Ill. 130.

■ The case last cited again involved objections to the approval of a sale. The objections sought to attack the prior order of sale on the ground of forgery of certain notes filed as claims, and other items, which made the sale unnecessary. The Supreme Court held that these objections constituted a collateral attack on the prior order of sale, and could not be considered. The court applied to probate orders the rule

331

(par. 82, chap. 77, Ill. Rev. Stats. [1951; Jones Ill. Stats. Ann. 104.099]) that judgments, decrees and orders become final after thirty days; an attack thereon within thirty days is a direct attack, but after thirty days it is a collateral attack.

 An important feature of the opinion in the last cited case, is its discussion of the "continuing" equitable jurisdiction of a probate court. It is expressly stated that, in the exercise of such continuing jurisdiction, the court "is governed by the same equitable principles and rules which control a court of equity in vacating a decree after the expiration of thirty days from its entry." The court will "vacate a decree which was entered without jurisdiction * * * will also vacate its order or decree after the expiration of thirty days where fraud has intervened in its rendition, but the fraud, to be a basis of relief, must be of that character which prevents the court from acquiring jurisdiction or merely gives it colorable jurisdiction. A court of equity will not, when its decree is questioned upon collateral attack, vacate the same for fraud occurring in the proceedings after jurisdiction had obtained, such as false evidence, concealment, and the like."

 In addition to this plain and unambiguous rule as to probate orders generally, we call attention to the statute as to accounts in probate, sec. 444, chap. 3 (Probate Act) Ill. Rev. Stats. [1951; Jones Ill. Stats. Ann. 110.541] which provides: "If the account is approved upon the hearing, in the absence of fraud, accident, or mistake, the account as approved is binding upon all persons to whom the notice was given." We must presume that, in using the words "fraud, accident, or mistake," the legislature was aware of the decisions which define that terminology, and that it intended to apply the settled principles pertaining

thereto, in probate proceedings, with particular reference to accounts.

The facts and circumstances in the present proceeding must now be reviewed in the light of the principles above announced. It appears that August Luer operated several businesses which were incorporated, and his three sons and his daughter, Mrs. Turner, became stockholders therein. The sons also became directors. Mr. Luer was also interested in another company operated by his daughter and her husband, which failed, but he paid off the outstanding bonds, in the sum of $200,000 although he was not personally liable thereon. He gave notes to his three sons in amounts ranging from $20,000 to more than $50,000. He also took a note supposedly signed by Mrs. Turner, dated February 17, 1930, for nearly $57,000.

The latter note was placed in judgment by confession in 1943 by the appellee herein. Eight years later Mrs. Turner filed in that case a motion to open up the judgment and to assert various defenses, especially that the note was barred by the statute of limitations on its face, and also that it was a forgery. She now charges in this case, that the action of the executor was a fraud, intended to cheat and defraud her of her share of the estate. She does not say she had no prior knowledge of the judgment. In the intervening years she chose to indulge in extensive litigation in other courts concerning the same note.

The three sons brought suits upon their notes signed by Mr. Luer, in circuit court, and obtained judgments, which were subsequently the basis for allowance of claims thereon in the probate court. Mrs. Turner now asserts the executor fraudulently connived with the plaintiffs in those suits, by entering appearance, waiving service, not defending, and thereby permitted the entry of excessive judgments which included attorneys'

fees which should only be allowed upon judgments by confession. The only court record offered by Mrs. Turner to sustain these contentions are given as follows, being the same in each case, except as to amounts:

"March 5, 1943. Proof of personal service on defendant. Answer of defendant on file. Case called for trial. All parties announce ready. No request for jury and case is tried by the court without a jury. Evidence heard. The court finds the issues in favor of the plaintiff and against defendant and finds amount due the plaintiff from the defendant to be $26,552.59, which includes attorney fee of $2413.87.

"Judgment on said finding in favor of the plaintiff and against the defendant in the sum of $26,552.59 and costs. Said judgment and costs to be paid in due course of administration.

"Sept. 13, 1943. Petition of Augusta M. Turner to vacate and set aside the judgment entered in this case is argued and taken under advisement.

"Sept. 28, 1943. The motion of petitioner, Augusta M. Turner to set aside the judgment heretofore entered in this cause is denied."

 It is obvious that the foregoing are the court's minutes rather than its record, but that is all the appellant presents in the record before us. We must assume that the court below, in position to take judicial notice of its own records, found them in accord with the minutes. We are in no position to decide whether the circuit court erred in including attorney fees in the judgment. If it was error, Mrs. Turner could appeal without being a party to the judgment or suit, since she was affected by the result. Sec. [par.] 81, chap. 110, Ill. Rev. Stats. Moreover, she presented her arguments to the court which entered the judgment, and did not appeal from the adverse decision. The error of law of the circuit court in allowing attorney fees, if it was error, cannot be attacked in this

collateral proceeding, and the mere addition of the term "fraudulent" to the statement of facts does not serve to alter this result.

In addition to the foregoing, Mrs. Turner made the same attack now presented, in the United States District Court for the Southern District of Illinois. As a resident of Missouri, Mrs. Turner proceeded in the federal court on the ground of diversity of citizenship. That court held, regarding the judgments of her three brothers, as follows:

"the plaintiff sought to have certain judgments in the said Circuit Court of Madison County vacated; that in support of her motion to vacate the said judgments, the plaintiff attached her certain affidavit reciting in effect all of the matters which are alleged and set forth in the plaintiff's complaint and amended complaint in this cause of action; that in the proceedings in the Circuit Court of Madison County the plaintiff's motion was denied and that she has not prosecuted any appeal from the order denying her motion."

Accordingly, the court denied the relief prayed for.

■ That decision and judgment was appealed and affirmed. *Turner v. Luer,* 149 F. (2d) 51; cert. denied, 326 U. S. 767, 66 Sup. Ct. 171. Having elected to litigate the question in the federal court, we hold that Mrs. Turner is just as much bound by that decision as she would have been by similar suit in the state court with a final decision by the Supreme Court of this State. She is not permitted to litigate a question in federal court, and after adverse decision, start over again on the same point in the state courts. 50 C. J. S. Judgments, sec. 901 (b); *Leviton v. Board of Education of Chicago,* 385 Ill. 599; *Reilley v. Agricultural Ins. Co. of Watertown, N. Y.,* 311 Ill. App. 562.

■ That suit also involved the note supposedly signed by Mrs. Turner, (now claimed a forgery), on which the executor obtained judgment by confession

335

for more than $100,000, which included attorney fees and many years of accrued interest. She asserted that this note belonged to her, by reason of a trust set up for her by Mr. Luer in his lifetime. Her suit was begun in the federal court against the alleged trustees, her brothers, and the executor intervened. (Appellant considers this intervention a badge of fraud and conspiracy, but we do not perceive how the federal court could have adjudicated the executor's title to the note without the executor being a party to the suit.) The judgment of the federal court was that the note had been an asset of the trust as claimed, but it was a revocable trust, and had been revoked by Mr. Luer during his lifetime, and that Mrs. Turner knew it. In the course of these proceedings, it appears that the note was exhibited to Mrs. Turner and she did not deny her signature.

Appellant now says that Mrs. Turner thought it was some other note, although there is no claim that she was in the habit of issuing notes of such large denomination that she could not be expected to know which one was involved.

Regardless of these facts the following matters are decisive: The executor had inventoried Mrs. Turner's note as "doubtful" and had reported the judgment thereon was "uncollectible." Nevertheless, the probate court ordered the executor to make further efforts to collect. Pursuant thereto, the executor went into Missouri, the place of residence of Mrs. Turner, and filed suit in the United States District Court on the Illinois judgment. Under the liberal federal rules, Mrs. Turner filed a counterclaim asserting the various charges of fraud now presented here. She lost, both in the suit on the judgment and on the counterclaim. She also lost on the appeal. We are not now so much concerned with her counterclaim, although some of the statements of fact herein are based on the court of

appeal's findings from evidence before it. *Turner v. Alton Banking and Trust Company,* 166 F. (2d) 305.

█ The importance of the Missouri suit lies in the fact that the federal court had jurisdiction of the subject matter and of the parties now before this court. The jurisdiction of the court which entered judgment by confession could be and was attacked. If the note and power of attorney were forged the judgment was entered without jurisdiction. This was a proper question for litigation in the federal court. Although Mrs. Turner did attack the judgment on the ground of lack of jurisdiction, it appears she did it piecemeal. Her affidavit recites that, after the decision in the district court, affirmed in the court of appeals, and certiorari denied by the United States Supreme Court, she then presented the defense of forgery, again lost, with certiorari again denied by the United States Supreme Court.

█ Incidentally, the non-residence of Mrs. Turner indicates a basis for tolling the statute of limitations, a point which appellant's brief ignores.

█ We conclude that Mrs. Turner has not presented in this proceeding any basis for attack on the final judgment of the circuit court in entering the judgment by confession, except as to the jurisdiction of the court, and that she has litigated these questions in a court of competent jurisdiction, and is barred from presenting the same questions again in this proceeding. Restatement, Judgments, secs. 7, 9, 10.

We now consider orders of the probate court which are under attack in this collateral proceeding. We here repeat that all orders of the probate court were entered only after due notice to appellant, and the records present no valid claim to the contrary.

█ Appellant contends that about $25,000 has been allowed by the probate court in executor's and attorney's fees, and that the executor fraudulently

337

procured these allowances in order to deplete the estate, especially in view of the fact that the executor admitted that the Turner note was doubtful, and the judgment thereon uncollectible. While it is plain that unusual fees were the result of Mrs. Turner's extensive and futile litigation, including three pleas to the U. S. Supreme Court, we do not review the propriety of the amounts allowed. Upon the principles previously announced, we hold that appellant is barred from attack thereon in this collateral proceeding, since the probate court had jurisdiction to fix the amount of fees.

Mr. Luer's three sons were nominated and qualified as co-executors under the will. They presented their resignations, and the probate court was informed that they desired to bid upon the sale of assets of the estate, and to present claims. The principal assets offered for sale were stocks in the family corporations, operated by deceased. The resignations were duly approved after notice.

Upon the application of the remaining executor, the probate court ordered sales of assets of the estate, including the corporate stocks. Mrs. Turner appeared and partially resisted the application, but did not appeal from the decision thereon. The stocks were bid in by one of the sons, for par or more. Upon further hearing, the sale was approved, without objection.

We recognize the fact that stocks in family corporations have a limited market, and that the sons of the deceased, as directors, were in an advantageous position. We cannot know what would have happened if the probate court had barred them from bidding. Perhaps more would have been realized on the sale, or perhaps Mrs. Turner could have bought the stocks for a fraction of the actual bid. There being no claim, nor any stated basis for a claim, that Mrs. Turner was not aware of the facts, or was otherwise precluded

338

from presenting the facts to the court, the order of sale and the approval thereof are not subject to this collateral attack upon any ground presented by appellant.

 Another objection to the sale, besides the alleged inadequacy of price, is that the title of the executor was in doubt, and that it was a fraud to proceed with the sale when the executor knew of the attack upon its title to the stocks. This has reference to Mrs. Turner's claim that the stocks were part of a trust which she asserted in the federal court in Illinois. If anybody in the world knew of this cloud on the executor's title, it was Mrs. Turner, who filed her suit shortly after the sale was approved. Assuming that her false claim might have affected the judgment of the probate court, we hold that her negligence in failing to present that claim in the probate court was a reason it was not considered. On the principles previously announced, she cannot now present that assertion in this collateral attack.

 The executor did not immediately make delivery of the stocks and accept payment therefor. This was not done until the termination of Mrs. Turner's litigation in which she claimed title to the stocks by virtue of a trust. In the interim, dividends were declared, and the executor received and accounted for them. Appellant cites these facts as examples of fraud. If the question were directly before us, we might hold that the executor had exercised good business judgment, and had honestly accounted.

 As the situation is actually presented, these and several other objections to the executor's report, are based upon analysis of reported items. If any of these objections are sound, we hold that they were just as apparent when the report was filed and approved, as they were four years later when this pro-

ceeding was commenced, and therefore are not available to appellant on this collateral attack.

The appellant's reliance upon the continuing jurisdiction of the probate court is further apparent in her reply in the court below, which asserts that the appeal involves the "last current report" of the executor. This last current report, filed October 6, 1949, brings the account to date by listing the disbursements in the intervening four years since the last previous order of the probate court. The items consist mainly of taxes. Not one single item in this last report was questioned in the courts below, and none is involved on this appeal.

The foregoing shows that the appellant has simply attached charges of fraud to nearly everything that happened in the Luer Estate. While some charges are absurd upon their face, our holding is limited to the point that all questions now presented have been previously adjudicated by a court of competent jurisdiction, and that appellant presents no sufficient basis for this collateral attack upon the ground of fraud, accident, or mistake.

Appellant has presented no existing basis for the citation against the executor; and the petition for its removal, and to surcharge its accounts was properly stricken; and the dismissal of the proceedings was correct. The judgment is affirmed.

*Judgment affirmed.*

BARDENS, P. J. and CULBERTSON, J., concur.