In the Matter of the Estate of Richard Barnes Stith, Deceased.

The University of Illinois, the University of Nebraska, the University of Southern California, California Institute of Technology and Shriners Hospital for Crippled Children, as Beneficiaries of a Testamentary Trust, Petitioners-Appellees, v. Signa Marie Stith, Respondent-Appellant.

Gen. No. 68–24.

Third District.

February 10, 1969.

McDermott, Will & Emery, of Chicago, Belli, Ashe, Gerry & Ellison, of San Francisco, California, and Heyl, Royster, Voelker & Allen, of Peoria, for appellant.

Richard H. Radley, Davis, Morgan & Witherell, and Arthur B. Copeland, of Peoria, for appellees.

STOUDER, J.

Appellees, University of Illinois, University of Nebraska, University of Southern California, California Institute of Technology and Shriner's Hospital for Crippled Children, filed their petition in the Circuit Court of Marshall County seeking to vacate three orders entered by the trial court in probate proceedings respecting the estate of Richard Barnes Stith. The three orders sought to be vacated were successive orders extending the period during which the surviving spouse, Signa Marie Stith, appellant, could elect to renounce the will of her husband. The trial court vacated the last two extensions of time, from which orders the surviving spouse has appealed, and declined to vacate the first of such extensions, from which order appellees have cross appealed.

Richard Barnes Stith died testate in September, 1964, leaving surviving him a son and a widow, the appellant herein. His will was duly admitted to probate on November 9, 1964. The bulk of his estate was left to a testamentary trust from which his widow and son were to receive $6,000 each per year, the residuary beneficiaries being appellees.

On August 30, 1965, appellant filed her verified petition requesting an extension of the period of time during which she could file her renunciation and on the same day an order was entered extending such time to February 5, 1966. The petition alleged that there was pending in Nebraska, a petition for the discovery of assets and claims totaling $29,000 which had not been allowed, all of which affected her share in the estate.

On February 3, 1966, a second verified petition for the extension of the renunciation period was filed and pursuant to this petition the period was extended to February 5, 1967. The petition alleged that litigation was pending affecting the interest of the surviving spouse and referred to litigation in Nebraska and Illinois as well as the discovery petition. It appears that the discovery

petition had in fact been dismissed by stipulation in December, 1965, and that the claims totaling $29,000 had been allowed on January 6, 1966, with the consent of the executor.

A third verified petition for extension of time to file her renunciation was filed by appellant on January 5, 1967. This petition alleged that a will construction action had been filed in the circuit court in September, 1966. Pursuant to this petition the period was extended until 90 days after the determination of such action.

Appellees were given notice by mail of the hearing on the admission of the will to probate. None of such appellees filed its appearance in the proceeding or otherwise participated therein prior to August 27, 1967. Appellant did not give notice to any of the appellees of the filing of any of the three applications for extension of time. Notice was given to Jefferson Trust and Savings Bank, executor, of the first application and the executor consented to the two subsequent extensions.

On August 27, 1967, appellees filed their petition which is the subject of this appeal. The petition was filed in the pending probate proceeding and sought to vacate the three orders of extension. The petition sets forth the contents of the three applications for extension of time, the procedure involved and the orders entered pursuant thereto. In particular, the petition alleged that at the time of the first two extensions, no litigation was then pending affecting the share of the surviving spouse because claims filed in the estate did not constitute such litigation and even if so considered, such claims had been allowed by consent prior to the granting of the second extension. Further, the only proceeding pending in Nebraska was ancillary administration of the estate and hence there was no pending litigation in Nebraska affecting the widow's share. The petition asserts that the applications for extension of time were false and fraudulent and therefore the orders en-

tered pursuant thereto were void for want of jurisdiction. It should be noted that the petition does not assert as grounds for relief, any impropriety in the manner of giving notice, it being conceded that notice to the appellees was not required. Nor do appellees in their petition seek any relief based on lack of notice to them.

At the hearing on the petition the attention of the court was directed to the record concerning the filing and allowance of claims. In addition, there was testimony to the effect that the only proceeding in Nebraska was the ancillary administration and the only proceedings in Illinois were the administration of the estate of Richard Barnes Stith and the will construction case filed in September, 1966.

The trial court, in a detailed memorandum opinion, found that claims filed in a probate proceeding but unallowed did constitute pending litigation affecting the share of the surviving spouse. It further found that claims allowed less than thirty days before application for extension of time did not constitute such pending litigation and that ancillary administration did not constitute such litigation. The trial court, by its order entered in accordance with such opinion, declined to set aside the first order but did set aside the second order on the grounds that it had no jurisdiction to enter such order and also vacated the third order because it had been entered during a period of time invalidly extended.

Appellant on this appeal argues that each of the extensions of time was properly granted and that in any event the allegations of appellees' petition are insufficient to support the relief sought and granted. Accordingly the trial court properly declined to vacate the first order of extension but erred in vacating the second and third orders of extension.

On the other hand, appellees argue that the allegations in each of the first two petitions were false and fraudulent and hence the orders entered pursuant

thereto were void because the trial court lacked jurisdiction to enter them. Accordingly, appellees argue the trial court properly vacated the second extension order but erred in declining to vacate the first.

The statute upon which the extensions of time were predicated is chapter 3, section 17, Ill Rev Stats 1965, which provides, "In order to renounce a will the testator's surviving spouse shall file at the time and place provided for herein a written instrument signed by the surviving spouse and declaring the renunciation. The time of filing the instrument shall be as follows: (a) within 10 months after the admission of the will to probate or (b) within such further time as may be allowed by the court if, within 10 months after the admission of the will to probate or before the expiration of any extended period, the surviving spouse files a verified petition therefor setting forth that litigation is pending that affects the share of the surviving spouse in the estate. The place of filing the instrument shall be in the court in which the will was admitted to probate. The filing of the instrument is a complete bar to any claim of the surviving spouse under the will. As amended by act approved Aug. 24, 1965."

There would appear to be no disagreement between the parties concerning the general principles relating to renunciation, namely, that the benefits to which a surviving spouse may be entitled under chapter 3, section 16, Ill Rev Stats 1965, are only available after renunciation of the decedent's will has been accomplished in accord with the provisions of section 17. Pearce v. Pearce, 281 Ill 194, 118 NE 84, and Schaffenacker v. Beil, 320 Ill 31, 150 NE 333. However, there is disagreement in the interpretation and application of section 17, subsection (b), chapter 3, Ill Rev Stats 1965, and in this regard we note that neither party has called to our attention any Illinois cases interpreting and applying this subsection.

Before considering the statutory provisions, our initial consideration must be directed at the basic assertion of appellees' petition, namely that the orders of extension were void because of the trial court's lack of jurisdiction to enter them. This issue has been partially obscured in the arguments of the parties and in the memorandum of opinion of the trial court because of the procedure invoked by appellees. Although appellees' petition does not so allege, both the parties and the trial court appear to have treated such petition as having been filed under chapter 110, section 72, Ill Rev Stats 1965, dealing with relief from final judgments more than 30 days after their entry. The arguments of the parties have been directed principally to the applicability or nonapplicability of equitable principles to the relief sought. Appellees have directed our attention to section 72, subsection (7) of chapter 110, Ill Rev Stats 1965, which provides, "Nothing contained in this section affects any existing method to procure that relief" and assert as a conclusion therefrom, that judgments which are void because of want of jurisdiction, may be collaterally attacked at any time and equitable principles which might otherwise be applicable to section 72 proceedings are not therefore applicable. However, such conclusion assumes without supporting argument, that the orders of extension by the trial court were void because of lack of jurisdiction. Assuming for purposes of argument that the extension orders were based on false allegations and that the procedure invoked by appellees was appropriate to assert the invalidity of such orders, the initial question to be determined is whether the orders of extension were void because of lack of jurisdiction or merely erroneous.

■■ The power and authority of a court to hear controversies of the general class involved may be said to relate to jurisdiction of the subject matter and the power and authority to hear a particular controversy may be

said to relate to jurisdiction of the parties to a controversy within the general power and authority of the court. Ward v. Sampson, 395 Ill 353, 70 NE2d 324. It follows that the propriety of the judgment, i. e., absence of error, does not relate to the jurisdiction of the court. In Ward v. Sampson, supra, the court affirmed a trial court's decree ordering a conveyance of real estate against the collateral attack of want of jurisdiction in the absence of any allegation or proof of special equities therein as required by statute. The court held that the decree, although clearly erroneous, was entered by a court having jurisdiction of the controversy and its decree was therefore not subject to collateral attack.

██ The general principle is that after 30 days from its entry, a judgment is not subject to collateral attack or impeachment except for want of jurisdiction to enter such judgment, or that the jurisdiction was invoked through fraud, excusable mistake or duress. The order of a trial court in a probate proceeding is like any other judgment and a final order in a probate proceeding is entitled to all the attributes of finality as is accorded other judgments. Mitchell v. Mayo, 16 Ill 83; Barnard v. Michael, 392 Ill 130, 63 NE2d 858.

██ In the instant proceeding, the trial court had jurisdiction of the subject matter, namely general jurisdiction to hear probate matters, and it had jurisdiction of the parties, i. e., verified application for extension and appropriate notice as required. We believe this conclusion is supported by Barnard v. Michael, 392 Ill 130, 63 NE2d 858. In Barnard, supra, an executrix applied to the court for leave to sell real estate to pay debts of the estate alleging that such sale was necessary because of an insufficiency of personal assets to pay the claims allowed, or to be allowed, against the estate. Notice of hearing on such petition was given by publication, and sale of the real estate was authorized. Sale of the real estate took place more than 30 days after the entry

of the order authorizing the sale and upon application of the executor for approval of the sale, the beneficiaries of the estate objected to such approval because of lack of jurisdiction of the court to authorize the sale by its previous order. The objectors alleged among other things, that the sale to pay debts was unnecessary because one of the claims against the estate was based on a forged note and that the allowance of the widow's award was excessive. On appeal the court held the trial court had jurisdiction to enter the order authorizing the sale of the real estate and the objections thereto, whether true or not, made more than 30 days after the entry of the order complained of did not affect the jurisdiction of the court.

■■■■ This brings us to a consideration of the second general basis for a collateral attack or impeachment of a judgment for want of jurisdiction, namely fraud, excusable mistake or duress. In the first place, characterizing facts or conduct as "fraudulent," is a conclusion and must be supported by allegations of fact from which such conclusion is warranted. In the second place, fraud does not mean that the party making such assertion had a defense to the original action upon which the judgment was based, or that such judgment was erroneous. To constitute fraud it must be shown not only that the party asserting such fraud had a right which he failed to assert in the former proceedings, but that he was deprived of an opportunity to present such right or defense by improper conduct of the party securing such judgment. City of Chicago Heights v. Public Service, 345 Ill App 393, 103 NE2d 519; In re Luer's Estate, 348 Ill App 324, 108 NE2d 792. In other words, the trial court entering the original judgment is said to have "colorable jurisdiction," the judgment having been secured by conduct which deprived the opposing party of an opportunity to present claims which would have prevented the entry of the judgment complained of. In

437

City of Chicago Heights v. Public Service, supra, which is illustrative of the general principle applicable, it was shown that the city, the defendant in the original action giving rise to the judgment sought to be vacated, had a defense to such action but that such defense was not asserted because of collusion between the plaintiff and the attorney for the city. From the foregoing case as well as the cases cited therein, it may be concluded that neither error in the judgment nor the existence of a defense to the claim upon which such judgment is based, constitute fraud sufficient to invalidate the jurisdiction of the court.

■ When we consider the allegations of the appellees in this case it is clear that even if such allegations are true they at best warrant the conclusion that appellees might have had a defense to the applications for extensions of time. Such allegations present no facts from which it can be inferred that the jurisdiction of the court was invoked as the result of any improper conduct of appellant which deprived appellees of the opportunity of asserting any claim in opposition to the request of appellant.

It is therefore our conclusion that the petition of appellees is insufficient to show any want of jurisdiction of the trial court to enter the extension orders. In view of our conclusion it is unnecessary to consider the propriety of the extension orders and although we have assumed, for the purpose of clarifying the issues, that litigation affecting the share of the surviving spouse might not in fact have been pending this does not mean that we intend thereby to express any opinion with respect thereto.

For the foregoing reasons the judgment of the Circuit Court of Marshall County declining to vacate the first extension order is affirmed, and to the extent that such judgment vacates the second and third extension orders, such judgment is reversed.

Judgment affirmed in part and reversed in part.

SCHEINEMAN, J., concurs.

ALLOY, J., dissents.

ALLOY, J., dissenting:
I must respectfully dissent from the majority opinion in this case.

We all recognize that renunciation of the will by the widow was required to be made under section 17 of the Probate Act (1965 Ill Rev Stats, c 3, § 17), within ten months of the time of admission of the will to probate or within such further time as is allowed by the court "if, within ten months after the admission of the will, the surviving spouse files a verified petition setting forth that litigation is pending that affects the share of the surviving spouse in the estate." Such requirement as to renunciation obviously represents the public policy of the State in requiring that renunciation be made within the ten-month period or within an extended time obtained specifically as set forth in the Act. In the case before us, in the application for the second extension, the verified petition recited that litigation was pending which affects the share of the petitioner specifically as follows:

"(a) litigation in Nebraska in which the court is being asked to pass upon certain questions which will determine the amount of property owned by decedent at the time of his death.
"(b) litigation in Illinois in which the court is being asked to pass upon certain questions which will determine the amount of property owned by decedent at the time of his death."

On the basis of the record in this cause, neither of these assertions were true. The trial court treated the verified petition as a misrepresentation of fact when it was dis-

439

closed that the assertions were untrue. It is noted that the beneficiaries in the case were given no specific notice (even though it was not required) and consequently could not be estopped to assert or bring to the attention of the court the issue of fraud or misrepresentation at the first opportunity.

In a situation such as confronted the trial court in the present case, the court was in the position outlined in Remer v. Interstate Bond Co., 21 Ill2d 501, at page 514, 173 NE2d 425, where the court says:

> "It is true that where a court has jurisdiction of the parties and the subject matter its judgment is not subject to collateral attack. (Cherin v. The R. & C. Company, 11 Ill2d 447.) This does not mean, however, that a judgment obtained by deception may not be questioned after the expiration of thirty days. If proceedings regular in form are tainted with fraud or coercion, the court is not helpless to grant relief. The legislative policy favoring conclusiveness in the county court's determination does not displace the higher policy of the law which requires a remedy for every wrong. If the order was obtained by fraud, as petitioner alleges, elementary principles of law require that relief be granted."

I cannot agree with the majority opinion which in effect says in substance that the court is powerless to vacate an order based on misrepresentation, where it had jurisdiction to enter the order. I feel that this would be a backward step in the procedure to correct orders which have been obtained by fraud or misrepresentation. Section 72 of the Civil Practice Act (1967 Ill Rev Stats, c 110, § 72) was never meant to be limited in that sense. Nor do I feel that there was any "pending" litigation which could have been based on the claims which had been allowed and consented to by the estate. Time for objections by persons in interest had passed and there

was nothing to show that the judgments were not conclusive or that there was any right of appeal (as a matter of right) in any party. The circumstance that one of the heirs could have filed a motion to vacate, in my judgment, was not the type of "pending" litigation to which the legislature obviously referred in section 17 of the Probate Act.

I do not believe that the case of Barnard v. Michael, 392 Ill 130, 63 NE2d 858, is authority for the conclusion that the trial court in the instant case had no power to vacate the order granting the second extension. That case involved a sale of real estate to pay debts and the Supreme Court itself (at page 137) pointed out:

"This is not a case where the doctrine of restoration or restitution, which we have mentioned earlier in this opinion, would apply in the event of a reversal. Here, the appellee has not received, by virtue of the decree, benefits of property belonging to appellants. The property sold belonged to the decedent and constituted assets of his estate, available for the payment of debts. The benefits derived from the decree approving the sale will inure to all persons interested in the estate. Neither did it rest within the choice or discretion of appellee whether the decree appealed from should be executed. The purchasers had an absolute right, after the expiration of thirty days from the entry of the decree approving the sale, to demand of the executrix a conveyance of the property purchased . . . . The situation is not analogous to a case where an appellee, after appeal, of his own volition, executes the judgment or decree appealed from, either by selling property of the appellant under execution or other process issued upon the judgment, or by appropriating to himself property of the appellant erroneously awarded by the decree to appellee."

The emphasis, therefore, is on the circumstance that the benefit is not obtained by the party guilty of fraud or misrepresentation. In the instant case, the benefit accrues to the party guilty of misrepresentation and there are no innocent third parties, or others who are or would be injured by depriving this party of the benefit of an extension obtained, so far as the record is concerned, by misrepresentation.

I do not believe that a trial court is powerless to set aside such order when the facts relating to misrepresentation are presented to the court and where the only consequence of setting aside such order is to deprive the party guilty of such misrepresentation of certain benefits. Accordingly, I believe that the order of the Circuit Court of Marshall County should be affirmed.