2020 IL App (1st) 191348-U

SIXTH DIVISION
November 30, 2020

No. 1-19-1348

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | |
|---|---|
| OLGA DAL, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) Appeal from the |
| BERNARD S. BLACK and SAMUEL BLACK, as | ) Circuit Court of |
| Trustees of the Supplemental Needs Trust for the Benefit | ) Cook County. |
| of Joanne Black, Dated December 19, 1997; BERNARD | ) |
| S. BLACK and SAMUEL BLACK, as Trustees of the | ) |
| Irrevocable Trust for the Benefit of the Issue of Renata | ) |
| Black, Dated December 19, 1997; and BERNARD S. | ) No. 17 L 9744 |
| BLACK and SAMUEL BLACK, as Trustees of the | ) |
| Joanne Black 2013 Trust Agreement, Dated March 22, | ) |
| 2013, | ) |
| | ) Honorable |
| | ) Thomas E. Mulroy, |
| Defendants-Appellees, | ) Judge Presiding. |
| | ) |
| (JEANETTE GOODWIN, Court-Appointed Successor | ) |
| Conservator for Joanne Black, and ANTHONY DAIN, | ) |
| Trustee, | ) |
| | ) |
| Intervenors-Appellants). | ) |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Harris and Griffin concurred in the judgment.

ORDER

¶ 1     *Held*: The judgment of the circuit court denying intervenors' petition, pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2018)), to set aside the parties' agreed judgment in this matter is affirmed. Intervenors failed to establish the existence of a meritorious defense, the circuit court did not err in refusing to draw an adverse inference against plaintiff for defendants' failure to appear at the hearing on the petition, and the judgment is not void as a matter of law, either as the product of presumptive collusion or for a failure to join necessary parties.

¶ 2     This is the most recent of three appeals to reach this court stemming from disputes between defendant Bernard Black and intervenors, who represent the interests of Mr. Black's sister, Joanne Black, following the death of Bernard and Joanne's mother in 2012. On June 28, 2019, we affirmed the denial of Bernard's motion to vacate the filing of a Colorado probate court's judgment ordering him to pay Joanne treble damages under that state's civil theft statute for wrongfully diverting Joanne's assets into a trust benefiting Bernard and his children. *Conservatorship Estate of Black v. Black*, 2019 IL App (1st) 181452, ¶¶ 1-2. And on November 22, 2019, we considered the validity of an agreed judgment between Bernard and his wife, Kathleen Litvak, pursuant to which trust funds were to be turned over to Ms. Litvak, who it was alleged had advanced her own funds for the payment of attorney fees incurred in the trust litigation. *Litvak v. Black*, 2019 IL App (1st) 181707, ¶ 3. Under the circumstances of that case—including the fact that Ms. Litvak was aware of the Colorado proceedings and knew that Bernard had been ordered not to use trust assets to pay his attorney fees—we held that the agreed judgment was void as the product of presumptive collusion and should have been vacated by the circuit court in its entirety. *Id.* ¶¶ 27, 33.

¶ 3     A similar loan for the payment of attorney fees was made in this case and a similar agreed judgment was entered. The lender, plaintiff Olga Dal, is Ms. Litvak's cousin. We must decide whether the facts of this case—including Ms. Dal's uncontroverted testimony that she relied on the advice of her lawyer, was unaware of the proceedings in the Colorado probate court or of any

restrictions on the encumbrance of trust funds, and did not know that Ms. Litvak had also loaned money to the trusts for the payment of Mr. Black's attorney fees—require a different result. For the reasons that follow, we find that they do and affirm the decision of the circuit court.

¶ 4                                    I. BACKGROUND

¶ 5     The events preceding this dispute have been set out in detail by this court twice before. We repeat them again here only to the extent necessary to decide the issues raised in this appeal.

¶ 6                          A. Distribution of Renata Black's Assets

¶ 7     Renata Black died in May 2012 and was survived by her two children, Joanne and Bernard. A significant portion of Renata's assets (totaling approximately $3.5 million at the time of her death) were held in accounts for which Joanne, who suffered from mental illness, was the payable-on-death beneficiary. These "POD assets" passed directly to Joanne and not through Renata's estate. The assets that did pass through Renata's estate according to her will were divided as follows: 2/3 to a "Supplemental Needs Trust" for Joanne's benefit and 1/3 to an "Issue Trust" for the benefit of Bernard and his children.

¶ 8     Bernard was the executor of Renata's estate. Following his mother's death, Bernard also sought appointment as Joanne's conservator in a Colorado probate court, arguing that Joanne, who was homeless and living in Colorado, was unable to manage her own financial assets. After appointing an attorney and a guardian *ad litem* for Joanne, the Colorado probate court agreed to appoint Bernard as her conservator. Bernard then convinced the court that he should be permitted to execute a disclaimer of Joanne's interest in the POD assets. According to the probate court, Bernard did not disclose that Joanne's POD assets would then pass through Renata's estate, with 1/3 going to him and his children by way of the Issue Trust. Upon learning of this, Joanne's counsel moved to void the disclaimer in early 2015.

¶ 9    The probate court ordered an independent accounting, held an evidentiary hearing, and ultimately concluded that Bernard had breached his fiduciary duties to Joanne by diverting over $1 million of the POD assets into the Issue Trust and transferring over $400,000 in additional funds to his children. In all, the court found Bernard had converted nearly $1.5 million of Joanne's assets to his own benefit. The court awarded Joanne treble damages under Colorado's civil theft statute and stated in its order that "all *** assets related to [Joanne Black] are frozen." The Colorado Court of Appeals affirmed that order in all respects on May 20, 2019. *Black v. Black*, 422 P.3d 592, 597 (Colo. App. 2018).

¶ 10    When Bernard then attempted to pay attorney fees with money from the Issue Trust, Chase Bank apparently refused to release the funds, citing both the Colorado probate court's freeze order and an order entered in a guardianship action in New York that prevented Mr. Black from making any distributions from the Issue Trust. In response, Bernard filed suit in the United States District Court for the Northern District of Illinois (Black v. Black, No. 1:16-cv-1763 (N.D. Ill.)), seeking a declaration that, because Joanne was not a named beneficiary of the Issue Trust and Bernard was one of its trustees, he should be free to administer the trust "without restraint." The federal case was, according to filings made in *Litvak v. Black*, dismissed with prejudice in July 2016, with the court determining that it did not have personal jurisdiction over Joanne.

¶ 11    When informed of these proceedings, the Colorado probate court characterized Bernard's federal complaint as "rife with inaccuracies," reiterated that he had "no rights to any of the funds contained within the Issue Trust that were transferred or derived from Renata Black's [POD] accounts" and stated that he was essentially asking the district court "to allow him to spend funds that he misappropriated from Joanne Black on his attorney fees and costs to maintain the litigation he [had] initiate[d] against her and his cousins." The court granted a request by Anthony Dain

(Joanne's cousin and a co-trustee, with Bernard and Bernard's son Samuel, of the Supplemental Needs Trust) to use funds from that trust to hire counsel to defend Joanne in the declaratory action. The court chastised Bernard and Ms. Litvak, as lawyers with an enhanced duty of candor to the court, for the way they had conducted themselves, stating "the inaccuracies in his pleadings before this court and Bernard's apparent refusal to accept the changes his mother made to her estate plan [were] absolutely appalling and [ ] not in keeping with his status as a law professor."

¶ 12                                      B. *Litvak v. Black*

¶ 13    In September 2017, Ms. Litvak brought a suit for repayment against, respectively, the Supplemental Needs Trust, the Issue Trust, and the 2013 Trust (a trust Bernard created while purporting to act as Joanne's conservator). She alleged that the trusts were jointly and severally indebted to her for several hundred-thousand dollars that she had loaned to Bernard to pay attorney fees. A week later, Ms. Litvak successfully moved for entry of an agreed judgment.

¶ 14    Learning of this, Mr. Dain and Joanne's successor conservator, Jeanette Goodwin, sought to intervene on Joanne's behalf and to vacate the agreed judgment pursuant to section 2-1301(e) of the Code of Civil Procedure (Code) (735 ILCS 5/2-1301(e) (West 2016)).

¶ 15    Following a hearing, the circuit court vacated the judgment as to the Supplemental Needs Trust and the 2013 Trust but not as to the Issue Trust, on the basis that Joanne was not a beneficiary and Mr. Dain was not a trustee of that trust. On appeal, we reversed in part, concluding that "[t]he motion to vacate and its various attachments, including the persuasive orders of other courts detailing the conduct of [Bernard] and Ms. Litvak in related litigation and Joanne's clear interest in all of the funds at issue," were "detailed allegations from which we [could] infer that the agreed judgment *** was improper" as to all three trusts. *Litvak*, 2019 IL App (1st) 181707, ¶ 27.

¶ 16                          C. The Present Action

¶ 17     Ms. Litvak's cousin, Ms. Dal, also loaned several hundred-thousand dollars to Bernard and Samuel for the payment of attorney fees. Like Ms. Litvak—and in fact while represented by the same law firm—Ms. Dal sued the trusts for repayment in September 2017 and sought entry of an agreed judgment for the full amount claimed just one week later.

¶ 18     Intervenors, Mr. Dain and Ms. Goodwin, were not served with a copy of the complaint or informed of the agreed judgment. When they subsequently learned of these events, they successfully moved to intervene and jointly filed the petition to vacate the agreed judgment pursuant to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2018)) that is the subject of this appeal.

¶ 19     An evidentiary hearing on that petition was held on June 3, 2019. Informing the court that he had noticed Bernard and Samuel as witnesses but that they had indicated they would not appear (Bernard was apparently living in Israel and Samuel was a medical resident at an out-of-state hospital), intervenors' counsel requested an adverse inference. The trial court judge said "I do have a right to draw an adverse inference. We'll have to play that by ear, I guess."

¶ 20     Mr. Dain then took the stand and testified that Renata Black was his aunt, and the Black siblings were his cousins. Renata had appointed Mr. Dain, along with Bernard and Samuel, as a co-trustee of the Supplemental Needs Trust. Mr. Dain stated that he used to also be a co-trustee of the other two trusts but had asked to resign from those roles by e-mail on December 2, 2015.

¶ 21     Mr. Dain first learned of this litigation in late October or November of 2017, when Chase Bank contacted him to make him aware of the agreed judgments that had been entered in this case and in *Litvak v. Black*. Mr. Dain consulted with Ms. Goodwin and together they obtained the Colorado probate court's permission to represent Joanne in both cases.

¶ 22    When asked why he was seeking to set aside the agreed judgment in favor of Ms. Dal, Mr. Dain explained that Bernard and Samuel had no right to encumber the trust assets in the way they did. According to him, the Supplemental Needs Trust was "a critical trust that [did] not allow trustees to encumber its assets," the Issue Trust "contained the assets that the Colorado courts ha[d] ordered were stolen from Joanne Black," and the 2013 Trust was "an unlawful trust that Bernard had set up without court approval." In Mr. Dain's view, "[t]hose were Joanne's conservatorship assets," and the loans made in this case and the resulting judgment constituted "a violation of multiple court orders that the assets were frozen"—orders that "[did] not allow Bernard to have any access, any control over those assets"—and that this was "one of many attempts to circumvent that order."

¶ 23    On cross-examination, Mr. Dain acknowledged that he had never spoken to Ms. Dal. Nor had he ever spoken to Bernard or Samuel about the loans Ms. Dal made to the trusts. He was aware of no conversations between Ms. Dal and defendants prior to those loans being made.

¶ 24    When asked by the court what evidence he had that the agreed judgment in this case was the product of fraud and collusion, Mr. Dain stated that Ms. Dal was Ms. Litvak's cousin and that both Bernard and Ms. Litvak were present in court when Bernard asked the Colorado probate court if he could pay his attorney fees from trust assets and was told unequivocally that he could not. Mr. Dain also noted that the trust document for the Supplemental Needs Trust specifically stated that the trust's assets could not be encumbered. Finally, Mr. Dain pointed out that he was not notified of the agreed judgment, even though the trust document made clear that he was a trustee.

¶ 25    Ms. Dal was also questioned at length during the hearing. She recalled her cousin Ms. Litvak asking her "to loan some money for legal fees"—around $320,000 or $330,000. She was "[g]enerally surprised" by this request but said "[l]et me see if I can." She called Ms. Litvak back

and said she would loan the money. The details were worked out by the parties' lawyers and Ms. Dal never spoke directly to Mr. Black or to Samuel about the loans. Nor did she inquire further about what the loans were for. As Ms. Dal explained, "I know it might sound strange, but we are family." Ms. Dal testified that she wrote her checks directly to the law firms to whom Mr. Black owed money and did not think about the loans again until a few years later, when she spoke to her lawyer about repayment. She could not remember if it was her idea to file suit but said she "wanted to get paid" and, "in conversation with my attorney, this was the route we took." Ms. Dal could not specifically recall reviewing the complaint in this matter or entering into the agreed judgment. When asked if she understood that was how she was going to be paid, Ms. Dal said "[n]ot necessarily."

¶ 26    Ms. Dal was not aware that Ms. Litvak had also loaned money to the trusts. She was not aware of the freeze order or the Colorado court proceedings. She had never spoken to or heard of Mr. Dain or Ms. Goodwin. When asked if she did anything to make sure that defendants were authorized to enter into the loans with her—besides following her lawyer's advice—Ms. Dal simply said "[w]hy would I?"

¶ 27    At the close of the hearing, intervenors' counsel again requested an adverse inference based on the fact that Bernard and Samuel had failed to appear and testify. The judge denied this request, stating: "I think you are entitled to [have them present to testify], but you have to follow, of course, the notice procedure, and it's usually preceded by a deposition. Especially if someone lives outside the country, you take an evidence deposition, use letters rogatory *** Here you didn't do any of that." Counsel stated that the depositions had been noticed by his predecessor counsel but could not say why they had never taken place.

¶ 28    The circuit court then denied the petition. The court's reasons for doing so are discussed in

our analysis.

¶ 29                                      II. JURISDICTION

¶ 30      The circuit court denied intervenors' section 2-1401 petition in this matter on June 3, 2019, and intervenors timely filed their notice of appeal on July 3, 2019. We have jurisdiction pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

¶ 31                                      III. ANALYSIS

¶ 32      Section 2-1401 of the Code establishes a statutory procedure for a party seeking to vacate a final judgment entered more than 30 days prior. 735 ILCS 5/2–1401(a) (West 2018). Proceedings under this section, though filed in the same case in which the judgment was entered, are viewed as a collateral attack and not as a continuation of the underlying litigation. *Id.* at § 2-1401(b); *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31.

¶ 33      Here, intervenors argue the circuit court should have granted their section 2-1401 petition and vacated the agreed judgment in favor of Ms. Dal because they established the existence of a meritorious defense—that the judgment was the product of fraud and collusion—by a preponderance of the evidence. Intervenors argue that the circuit court erred in its assessment of the evidence presented by refusing to draw an adverse inference in their favor as a result of Bernard and Samuel failing to appear and testify. Intervenors alternatively argue that the circuit court should have vacated the agreed judgment as a matter of law, either because a presumption of fraud and collusion arose, or for the failure to join them as necessary parties. We address each argument in turn.

¶ 34        A. Intervenors' Did Not Establish the Existence of a Meritorious Defense

¶ 35    "[A] section 2-1401 petition can present either a factual or legal challenge" to a final judgment and "the nature of the challenge presented *** dictates the proper standard of review on appeal." *Warren County*, 2015 IL 117783, ¶ 31. Where a fact-dependent challenge is raised, "the petitioner must set forth specific *factual* allegations supporting each of the following elements: (1) the existence of a meritorious defense; (2) due diligence in presenting this defense; and (3) due diligence in filing the section 2–1401 petition for relief." *Id.* ¶ 51. Where the facts are disputed, "a full and fair evidentiary hearing should be held." *Id.* To prevail, the petitioner must prove each of the above elements by a preponderance of the evidence. *Id.* We review the circuit court's ultimate decision on the petition for an abuse of discretion." *Id.*

¶ 36            1. Intervenors Failed to Present Evidence That, If Believed,
                    Would Establish Fraud and Collusion by Ms. Dal

¶ 37    We begin by considering what it means to prove "the existence" of a meritorious defense. Intervenors repeatedly rely on *Pirman v. A&M Cartage, Inc.*, 285 Ill. App. 3d 993 (1996), for the proposition that, in their words, a section 2-1401 petitioner "is not required to show the *validity* of the meritorious claim or defense, but only its existence." (Emphasis added.) It is true, as this court said in that case, that "[w]hether the defense of [the petitioner] would ultimately prevail at trial is not at issue in section 2-1401 proceedings." (Internal quotation marks omitted.) *Id.* at 1001. But a petitioner must still "assert sufficient facts which, if believed by the trier of fact, would defeat the plaintiff's claim." *Id.* The plaintiff in *Pirman* was struck by a truck at a construction site and secured a default judgment against the construction company and two of its employees, one or the other of whom the plaintiff alleged had been the driver of the truck. *Id.* at 994. The defendants succeeded, on a section 2-1401 petition, to set aside the default judgment and proceed to trial. *Id.* at 999. In affidavits attached to the petition, the employee defendants denied any involvement in

or knowledge of the plaintiff's accident, statements that were corroborated by both the construction company's president and time sheets indicating that one of the employees had actually been more than five miles away at the relevant time. *Id.* at 1001. In affirming the circuit court's order setting aside the default judgment, this court noted that "[t]hese affidavits, if believed, would suffice to defeat the plaintiff's allegations of negligence." *Id.*

¶ 38    Here, all of the evidence intervenors marshalled in support of their petition concerned *defendants'* wrongdoing and improper motives, not those of Ms. Dal. This is evidence that, if believed, could certainly support claims against them for breaches of their fiduciary duties as trustees. But the record is devoid of any evidence demonstrating—or from which one could even reasonably infer—that *Ms. Dal* had any idea that the loan transactions were improper or that she colluded in any way with defendants to secure entry of an improper agreed judgment in this case. Intervenors' counsel himself at one point candidly summarized Ms. Dal's testimony, stating: "[s]o obviously the testimony showed that she had no idea what she was getting into. She loaned the money and that was the end of it and was following her attorney's advice."

¶ 39    Ms. Dal testified that she was asked to lend the money by her cousin, Ms. Litvak, that she consulted with a lawyer who handled the details, and that when she wanted to be made a demand for payment and ultimately sued to enforce the parties' loan agreement. Her unrebutted testimony was that she had no knowledge of the Colorado probate proceedings or any reason to believe that Bernard and Samuel, as trustees, were not authorized to enter into the loan transactions. She never spoke to them directly and did not even know that her cousin, Ms. Litvak, had also loaned the trusts money.

¶ 40    Essentially acknowledging that he had presented no affirmative evidence of fraud and collusion, intervenor's counsel argued in the circuit court that an *inference* of fraud could be drawn,

not just from the fact that Ms. Dal was cousins with Ms. Litvak, but also because she was "willfully ignorant," *i.e.*, she did nothing to investigate the circumstances of the loan, how the money came to be held in the trusts, or what the trust documents said. The circuit court judge was not persuaded by this. In his view, Ms. Dal hired a lawyer and followed that lawyer's advice. She had an agreement stating how she was to be repaid and she was entitled to rely on that agreement. In the judge's words, "[s]he did anything any reasonable person would do."

¶ 41 Although the credibility of witnesses is not at issue at this juncture, intervenors must establish more than the possibility of fraud and collusion. They have the burden of presenting evidence that, if believed, would *prove* fraud and collusion by Ms. Dal. The circuit court did not abuse its discretion by finding, on this record, that intervenors failed to meet that burden.

¶ 42 2. An Adverse Inference Against Defendants Would Have Made No Difference

¶ 43 Intervenors also fault the circuit court for failing to draw an adverse inference in their favor from the fact that Bernard and Samuel failed to appear at the evidentiary hearing, though each was served with a notice to appear pursuant to Illinois Supreme Court Rule 237(b) (eff. July 1, 2005). That rule provides that "[u]pon a failure to comply with [such a] notice, the court may enter any order that is just," and impose "any sanction or remedy provided for in Rule 219(c) that may be appropriate," (*id.*), including the entry of a default judgment against the offending party (Ill. S. Ct. R. 219(c)(v) (eff. July 1, 2002)). Although the circuit court judge entertained intervenors' request for an adverse inference, he ultimately denied it, admonishing their counsel that "if these two men were essential to your defense, you should have deposed them." Intervenors now argue this was an abuse of discretion.

¶ 44 Intervenors fail to explain, however, how an adverse inference against Bernard and Samuel would have aided them in their quest to vacate the agreed settlement in this matter. The specific

inference they sought was that, as trustees, defendants "knew that they couldn't do these things." But as the transcript from the evidentiary hearing makes clear, what prevented the court from finding that intervenors had established the existence of a meritorious defense was not their failure to prove that Bernard and his son had acted improperly as trustees. Rather, it was the complete lack of evidence that Ms. Dal, as the other party to the transactions, knew there was anything improper about the loans or the agreed judgment. As Ms. Dal correctly notes, an adverse inference based on the failure of a witness to appear is only warranted if the witness's testimony would not have been "merely cumulative of the facts already established." *Tuttle v. Fruehauf Division of Fruehauf Corp.*, 122 Ill. App. 3d 835, 843 (1984).

¶ 45    Intervenors cite no case supporting the proposition that the failure of Bernard and Samuel to appear at the hearing should have resulted in an adverse inference against *Ms. Dal*, who did appear and was thoroughly examined. Indeed, such an inference is generally only proper where a missing witness "was under the control of the party to be charged and could have been produced by reasonable diligence." (Internal quotation marks omitted.) *Simmons v. University of Chicago Hospitals and Clinics*, 162 Ill. 2d 1, 7 (1994). And intervenors have never contended that Ms. Dal had any control over whether Bernard and Samuel appeared at the evidentiary hearing

¶ 46    Nor are we persuaded by intervenors' argument, raised for the first time in their reply brief (see Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) ("[p]oints not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing")), that the circuit court not only failed to draw an adverse inference in their favor but drew one *against* them based on the fact that only Mr. Dain, and not Ms. Goodwin, appeared at the hearing. We find no support for this supposition. Although the circuit court noted that Ms. Goodwin had elected not to appear or testify, intervenors' counsel explained why her testimony was not needed. The trust documents and orders

of the Colorado probate court establishing that Joanne was the beneficiary of two of the trusts and entitled to funds held in the third were already admitted into evidence. Nothing more was said on the matter. Counsel for Ms. Dal requested no adverse inference based on Ms. Goodwin's absence and intervenors' suggestion that the court "appeared to draw an adverse inference against Jeanette Goodwin, who was not noticed for testimony by any party," is not supported by any citation to the record. See Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018) (instructing that "reference shall be made to the pages of the record on appeal where evidence may be found").

¶ 47    In sum, even if we were inclined to find that the circuit court abused its discretion by refusing to draw an adverse inference against Bernard and Samuel, this would not be a basis for reversing the court's denial of intervenors' petition.

¶ 48            B. The Agreed Judgment Was Also Not Void as a Matter of Law

¶ 49    Intervenors argue in the alternative that an evidentiary hearing was not even necessary in this case because the circuit court should have concluded on the pleadings that the agreed judgment was void as a matter of law. A petition seeking to vacate a void judgment presents "a purely legal issue," and the petitioner "does not need to establish a meritorious defense or satisfy due diligence requirements." *Warren County*, 2015 IL 117783, ¶ 48. Our review of the circuit court's ruling on such a challenge is *de novo*. *Id.* ¶ 47.

¶ 50            1. Fraud or Collusion by Ms. Dal Could Not Be Presumed

¶ 51    As we stated in *Litvak*, "agreed judgments entered into through litigation that is not truly adversarial but collusively brought for the purpose of having such a judgment entered by a court of law are presumed to be collusive and fraudulent and may be challenged as void by adversely affected third parties." *Litvak*, 2019 IL App (1st) 181707, ¶ 24 (citing *Green v. Hutsonville Township High School District No. 201*, 356 Ill. 216, 221-22 (1934)). Intervenors rely on this rule,

urging us to conclude that the loans Ms. Dal made to the trusts and the agreed judgment she entered into with the trustees for repayment of those loans are no different than the ones at issue in *Litvak*. We concluded that Ms. Litvak's lawsuit against her husband in that case was " 'an adversary proceeding only in form,' " the resulting judgment was " 'not entered on a hearing on the merits, but by the default, acquiescence and tacit consent' " of the parties, and the " 'necessary inference' " was that the judgment was collusive, fraudulent, and void. *Litvak*, 2019 IL App (1st) 181707, ¶ 26 (quoting *City of Chicago Heights v. Public Service Co. of Northern Illinois*, 345 Ill. App. 393, 400-01 (1952)).

¶ 52    Intervenors point out that here, as in *Litvak*, defendants never answered the complaint, an agreed judgment for the full amount claimed was quickly presented to the court, and neither Mr. Dain nor Ms. Goodwin were notified of the proceedings, despite the fact that Joanne was a named beneficiary of two of the affected trusts.

¶ 53    As the circuit court recognized, however, there is one significant difference between *Litvak* and this case: the identity and presumed knowledge of the plaintiff. Ms. Litvak was Bernard's wife. She was informed of and present for the Colorado probate court proceedings and presumably aware of both the judgment against Bernard and the Colorado probate court's prohibition on him paying attorney fees with funds that rightfully belonged to Joanne. Ms. Dal's uncontroverted testimony, by contrast, was that she made the loans at issue here simply as a favor to her cousin, she had no idea that Ms. Litvak had made similar loans to the trusts, and she was completely unaware of either the Colorado probate proceedings or any restrictions on the use of the trust assets.

¶ 54    Put simply, the well-pleaded allegations in intervenors' petition—including that Ms. Dal was Ms. Litvak's cousin and that they were represented by the same law firm—did not give rise to a presumption that the parties' agreed judgment was the product of fraud and collusion. In any

event, such a presumption would be rebutted by Ms. Dal's unrefuted testimony that she had no reason to know there was anything untoward about the loans, the lawsuit, or the agreed judgment. Unlike in *Litvak*, the facts presented here do not give rise to a legal presumption that the agreed judgment in this matter was the result of fraud and collusion.

¶ 55    2. The Agreed Judgment Was Not Void for Failure to a Join Necessary Party

¶ 56    Intervenors also contend that the agreed judgment was void as a matter of law for failure to join them as necessary parties. Mr. Dain is a co-trustee, with Bernard and Samuel, of the Supplemental Needs Trust, and Ms. Goodwin stands in the shoes of Joanne, who is a beneficiary of both the Supplemental Needs Trust and the 2013 Trust and whose wrongfully diverted conservatorship assets, intervenors maintain, are still held in the Issue Trust. It is undisputed that, prior to entry of the agreed judgment, neither Mr. Dain nor Ms. Goodwin received notice of this lawsuit.

¶ 57    "A necessary party is one whose participation is required to (1) protect its interest in the subject matter of the controversy which would be materially affected by a judgment entered in its absence; (2) reach a decision protecting the interests of the parties already before the court; or (3) allow the court to completely resolve the controversy." *Zurich Insurance Co. v. Baxter International, Inc.*, 275 Ill. App. 3d 30, 37 (1995), *aff'd as modified*, 173 Ill. 2d 235 (1996). "An order entered by a court without jurisdiction over a necessary party is null and void." *Emalfarb v. Krater*, 266 Ill. App. 3d 243, 247 (1994).

¶ 58    We agree with defendants that Mr. Dain, as one of three co-trustees of the Supplemental Needs Trust, was not a necessary party to this action. But we must reject their argument that he is barred by collateral estoppel from asserting this position. Although Mr. Dain's assertion, in *Litvak*, that he was a necessary party to any agreed judgment affecting the trusts was rejected by the circuit

court and Mr. Dain did not seek an appeal from that ruling, the agreed judgment in that case was vacated in its entirety. Collateral estoppel applies where "the issue decided in the prior adjudication is identical with the one presented in the suit in question, there was a final judgment on the merits in the prior adjudication, and the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication." *Pedersen v. Village of Hoffman Estates*, 2014 IL App (1st) 123402, ¶ 42. Without a final judgment, there can be no collateral estoppel.

¶ 59 As defendants go on to point out, however, Article VI, Section 3, of the trust document for the Supplemental Needs Trust, titled "Trustee's Powers," provides that "[t]he trustee shall have all powers granted fiduciaries under the New York Estates Powers and Trusts Law [(EPTL)] as amended to the date of this Trust [December 19, 1997]." That law provides, now as it did then, that "[u]nless contrary to the express provisions of an instrument affecting the disposition of property, a joint power *** conferred upon three or more fiduciaries, *** by the terms of such instrument, or by statute, or arising by operation of law, may be exercised by a majority of such fiduciaries." N.Y. Est. Powers & Trusts Law § 10-10.7 (McKinney).

¶ 60 Intervenors dispute that this is the rule in New York, citing *Georgius v. Village of Morrisville*, 90 A.D. 3d 1256, 1256 (N.Y. App. Div. 2011), a decision of New York's intermediate appellate court, for the contrary proposition that, unless the trust instrument provides otherwise, co-trustees must act unanimously. The courts in both *Georgius* and *In the Matter of Luckenbach*, 104 N.E.2d 870, 871-72 (1952), the case the *Georgius* court relied on, however, had no reason to apply such a rule because the trust instruments in those cases specifically provided that the trusts could be bound by the actions of a single trustee and a majority of trustees, respectfully. *Georgius*, 90 A.D. 3d at 1256; *Luckenbach*, 104 N.E.2d at 871-72. *Luckenbach* also preceded the incorporation of section 10-10.7 into the EPTL by over a decade. As the notes to that section make

clear, the rule requiring unanimity of action historically applied only to the executors of estates. Turano, Practice Commentaries, N.Y. Est. Powers & Trusts Law § 10-10.7 (McKinney). Wanting individuals serving in that role to be treated the same as trustees, the legislature drafted section 10-10.7 to extend the rule providing that binding action may be taken by a majority of fiduciaries to executors as well as trustees. *Id.* Mr. Dain does not dispute that the trust instrument for the Supplemental Needs Trust incorporates by reference this and all other provisions of the EPTL. Nor does he propose an alternative reading of section 10-10.7 that would not directly conflict with a rule requiring uniformity of action by trustees. As such, we are not persuaded that Mr. Dain, by virtue of his role as one of three trustees for the Supplemental Needs Trust, was a necessary party to this action.

¶ 61    Ms. Goodwin, standing in the shoes of Joanne, argues that she was a necessary party because Joanne is a named beneficiary of both the Supplemental Needs Trust and the 2013 Trust. The parties appear to agree that this issue is controlled by Illinois law. "The general rule," stated by our supreme court in *Illinois National Bank of Springfield v. Gwinn*, 390 Ill. 345, 356 (1945), is indeed that "in all suits respecting trust property, whether brought by or against a trustee, the beneficiaries are necessary parties. The trustee is a necessary party because he holds the legal title," and "[t]he beneficiary is a necessary party because he has the equitable and ultimate interest to be affected by the decree." *Id.* There are, however, "numerous and varied exceptions" to this general rule. Ill. L. and Prac. Trusts *Trusts* § 122 (collecting cases). As a practical matter, a trustee is presumed to represent the interests of a trust's beneficiaries, and "whether [the] beneficiaries should [also] be made parties to a suit affecting the trust rests in the sound discretion of the court," following consideration of "the facts and circumstances of each case." (Internal quotation marks omitted.) *Anderson v. Elliott*, 1 Ill. App. 2d 448, 453 (1954); see also *Chicago B. & Q. R. Co. v.*

*Illinois Commerce Comm'n ex rel. Board of R.R. Trainmen*, 364 Ill. 213, 223 (1936) (likewise noting that the rule "is not inflexible" and "oftentimes its application rests in the sound discretion of the court").

¶ 62 In the circuit court, intervenors insisted that they were necessary parties because property rightfully belonging to Joanne would be affected by the agreed judgment in this case. They argued that because Joanne's interests conflicted with those of Bernard and Samuel, the two of them were incapable of adequately representing her in this litigation. When pressed by the circuit court, however, intervenors' counsel seemed at a loss to explain how they could have protected Joanne's interests if they had known about the lawsuit sooner. The court held an evidentiary hearing at which Ms. Dal's knowledge of the underlying trust litigation and the long history of conflict between intervenors, on the one hand, and Bernard, Samuel, and Ms. Litvak, on the other, was fully explored. At the close of that hearing, the court concluded that intervenors had made no showing that Ms. Dal colluded with Bernard or Samuel to present a fraudulent agreed judgment to the court in this case. The court instead found that Ms. Dal dealt in good faith and at arm's length with Bernard and Samuel in their capacities as trustees and was entitled to enforce her contract for repayment against the trusts. In the court's view, evidence of wrongdoing by the trustees could support claims against them for breaches of fiduciary duties they owed to Joanne but provided no basis for a finding that the agreed judgment should be overturned as to Ms. Dal.

¶ 63 We agree with the circuit court's assessment. The applicable law in Illinois when Ms. Dal entered into her loan agreement with defendants was the Illinois Trusts and Trustees Act (Act) (760 ILCS 5/1 *et seq.* (West 2014) (superseded in January of this year by the Illinois Trust Code (760 ILCS 3/101 *et seq.* (West 2020)). Sections 4.03 and 4.12 of the Act provided, respectively, that a trustee had the power "[t]o borrow money and to mortgage, pledge or otherwise encumber

any part or all of the trust estate" (760 ILCS 5/4.03 (West 2014)) and "[t]o execute contracts, notes, conveyances and other instruments, whether or not containing covenants and warranties binding upon and creating a charge against the trust estate ***." (760 ILCS 5/4.12 (West 2014)). Section 4.11 of the Act further provided that a trustee had the power "[t]o compromise, contest, prosecute or abandon claims or other charges in favor of or against the trust estate." 760 ILCS 5/4.11 (West 2014). Intervenors have never disputed that, as trustees, Bernard and Samuel held these powers.

¶ 64     As the circuit noted, "the argument that you have to join a necessary party is based on the fact that the necessary party has an argument to be made to set aside the Judgement." In other words, a necessary party is not just one whose interest will be affected by a judgment entered in his or her absence, but a party who, if present, would have been able to *protect* that interest. See *Zurich*, 275 Ill. App. 3d at 37 ("[a] necessary party is one whose participation is required *to* (1) *protect its interest* in the subject matter of the ***" (emphasis added)). Following a full hearing in this case, intervenors were left with no evidentiary support for their argument that Ms. Dal colluded in the presentation to the court of a fraudulent agreed judgment and no legal support for their argument that she had a duty to inquire further regarding the history of the trusts she was dealing with. The circuit court clearly considered all of the facts and circumstances of this case, and we cannot say that it abused its discretion by concluding that intervenors, on Joanne's behalf, were not necessary parties to this action because they lacked an ability, under the law, to protect her from a judgment against the Ms. Dal's favor.

¶ 65     The cases intervenors rely on are cited primarily for their pronouncement of the general rule noted above. In *In re Barth*, 339 Ill. App. 3d 651, 665 (2003), the circuit court entered an agreed order voiding a trust amendment on the basis that the trustor lacked capacity to make the amendment. Noting that there was "no evidence on the record from which the court could have

made this determination," we remanded the case for the circuit court to decide whether each of the intervenors would have been a beneficiary under the voided amendment and, if so, whether they were also necessary parties. *Id.* at 665-67. In *Zurich*, 275 Ill. App. 3d at 41, we held that the circuit court erred by requiring the individual joinder of thousands of claimants to a mass tort settlement, where the parties seeking joinder and the parties already joined shared a unity of interests. And in *Emalfarb*, 266 Ill. App. 3d at 247-49, we held that a municipality, though it certainly shared an interest in a lawsuit determining whether a statutory dedication of park space had made it a trustee over the land in question, was not bound by the judgment, could relitigate the issue if it chose, and was thus not deprived of any material rights by its failure to be joined. None of these cases compels a different result here.

¶ 66                                    IV. CONCLUSION

¶ 67     For the foregoing reasons, the judgment of the circuit court denying intervenors' petition to vacate the agreed judgment in this matter is affirmed.

¶ 68     Affirmed.